Brady. J.
The plaintiff sought hy the continuance of this action, the intestate having died during its pendency, to recover compensation for the sale of copper belonging to the defendant to the firm of Pope, Cole & Co., of Baltimore.
The contract embraced two transactions. One was an engagement on the part of the defendant to send the then present stock of its product of copper material at Butte, Montana territory, and also its whole product of copper material from the time of the agreement to July 1, 1884, as fast as made, and could be conveniently transported m the form of. matter, ore or pig copper for delivery there to the firm named.
The firm agreed to receive all that material and to smelt and refine it, and further to buy the product it yielded in fine copper and to pay the company therefor upon the terms and conditions stated. The firm were more particularly interested, and indeed at first only interested in procuring a contract for the smelting of the copper, and, having that object in view, secured the services of the intestate, for which they paid him.
The defendants were interested in the sale of the copper, as evidenced by letters of Mr. Wallace, who in that respect represented them, dated Ansonia, Conn., March 31, 1882, addressed to Messrs. Pope, Cole & Co. He said.- ‘‘I wish to see you about disposing of our matter, as I do not under' stand the business very well; thought I should prefer to see you and talk the matter over. If you expect to be in Hew York next week, will be glad.to meet you if you will telegraph me.”
On the first of April, Pope, Cole & Co. answered, stating that they would have no occasion to go to Hew York before the last of April, and said • Meanwhile we advise you to see and talk with Mr. Harnickel, Ho. 83 Maiden lane. He knows and understands our views and methods, and can advise you wisely. We shall be very glad of an opportunity to meet you and have a full and general talk with you, and shall avail of the first occasion to do so.”
It will be observed upon reading these letters that Mr. *224 Wallace desired to see the firm about the sale of the copper, not understanding the business very well, and that the firm referred him to Mr. Harnickel, the intestate, as a person who understood and knew their views and methods, and could advise him wisely, and thus transferred to the intestate the consideration of the best method of disposing of the copper. Mr. Wallace seems to have appreciated that suggestion, because, upon the 18th of April following, he wrote to the intestate, saying: “Your favors of the 7th inst., are at hand, having been forwarded to this place. I will see you immediately on,my return and arrange for a. contract for the sale of Matte and ore, as I think our mine will produce a much greater quantity of ore than we can smelt. Thanking you for the suggestions contained in your letter, I remain, etc.” From the testimony of George P. Cole, of the firm mentioned, it appears that the firm had many transactions with the intestate as a broker, for which he was compensated, and in reference to the contract in controversy made him a compensation for the smelting which was secured by it. The witness stated distinctly, and more than once, that the intestate was compensated for his smelting contract. He said: “ My recollection of it is, that all the talk we had previously about the contract, was solely one of smelting raw material, and we had agreed that we would compensate this party if that contract was concluded, if that contract was made, that is, the contract for the smelting of the copper material.” And when he was asked what he meant by “this party,” he answered,, “the brokerage house of A. Harnickel.” And, further, that “the compensation we gave A. Harcknickel was for the smelting contract, and that was all that we understood we were to pay him for; the feature of combining a sale of the copper to us came in at the last moment.” And, again, he said, “the feature of buying the material after we smelted it; was a positive disadvantage to us.” And the witness further said, “the house of A. Harnickel introduced to us and negotiated a smelting contract with the Montana Copper Company, for which services we paid the house of A. Harnickel precisely as we paid them for the subsequent one with the Parrot Copper Company; there was considerable friction about this contract, in the course of the dealings with the Montana Copper Company, and it was then suggested to us that at the termination of the Montana Company’s contract, we make one with the Parrot Company, and, as I remember it, Mr. Harnickel went, to work at that.” He was then asked:
Q. Who suggested it? A. I don’t remember how about, that; he knew all the circumstances of our dealings with the Montana Company; I do not know who suggested it; *225 maybe it was suggested by his own mind; the result was the making, on the termination of the contract with the Montana Company, and our negotiating a contract with the Parrot Company, simply for the smelting of their material; the sale of the resulting product of the refined copper was a feature brought into this at the close of the negotiation, was objected to by me strongly, but I finally concurred with Mr. Pope, and consented to Mr. Pope’s judgment, that we purchase the material.
Mr. George A. Pope, one of the firm, also stated that Mr. Harnickel was paid by his firm solely for the procuring of the smelting contract, that is, for obtaining from the defendants the smelting of their ores, and <¡>n being asked the following question: “Did you or did you not pay him in any way for obtaining from them the Parrot Silver and Copper Company the sale of their ore to you, answered: “ The firm of Pope, Cole & Co. did not pay Mr. Harnickel for the sale of the copper,” and said further that Mr. Harnickel originated the idea of the selling by the Parrott Silver and Copper Company of their copper to the firm, and again repeated what he had said, namely, “We never paid Mr. Harnickel for procuring the sale of the copper to us.” He was then asked the question as follows: “ Then when you stated that you paid Mr. Harnickel for procuring this contract, you meant to state that you only paid him for procuring that part of the contract which referred to the smelting of the Parrot Company’s ore by your firm?” The question was objected to and excluded, and exception duly noted.
This question is referred to only for the purpose of showing how confirmatory the answer must have been of the theory upon which the plaintiff thought she was entitled to submit the question at issue to the jury for the reason that the witness had, as his partner, Mr. Cole, previously had done, said that the compensation given Mr. Harnickell was for the smelting, which was secured by the contract.
In addition to this the witness on being advised that his partner, Mr. Cole had stated that Mr. Harnickell was never employed by the firm to procure the contract, that he acted simply as a middle man or as a broker, and then being asked ‘ is not that so answered ? ” I think that is strictly correct. My recollection of it is that Mr. Harnickel initiated this negotiation and submitted it to us as coming from himself.”
It is supposed that the examination of Mr. Wallace, who represented the defendants, is conclusive upon the plaintiff for the reason that he, when asked whether he ever had any conversation with Mr. Harnickel, in any way *226 about acting as agent for the company or as broker or agent, said “I never had an conversation with him as such.” This interrogatory was objected to as calling for a conclusion, and exception taken. It is not at all conclusive, for the reason that the attitude of Mr. Wallace must be determined by his acts, including his statements and his letters, and these letters show that he intended to avail himself of the services of Mr, Harnickell, whom he was informed wmuld advise him wisely, and it would seem that Mr. Harnickel was instrumental in accomplishing the contract, not only for the smelting, but for the sale of the copper which the defendants desired to make. And it is perfectly evident that the defendants knew that Mr. Harnickel was acting for the firm of Pope, Cole & Co., in that respect, and that the object of that firm originally was to procure the contract for smelting, to which was superadded the contract for the purchase of the ore and copper which was covered by the contract, and which was secured for the defendants through him.
The plaintiff’s claim is therefore unaffected by the rule which prohibits a double employment for seller and buyer, as denounced in Carman v. Beach (63 N. Y., 97); Duryee v. Lester (75 N. Y., 442), when the double agency is unknown, and is within the principle of the cases of Rowe v. Stevens (53 N. Y., 620); Redfield v. Tegg (38 N. Y., 212). In these cases the broker was employed to negotiate a purchase by exchange of property, and was held entitled to compensation from each owner. In this case there was nothing conflicting in the duties assumed by Mr. Harnickel, for the smelting was an entirely different subject from the sale of the fine copper resulting from that process, and which the firm mentioned purchased. But if there were, inasmuch as the defendant knew that he was acting as the broker of the firm as already suggested, the defendants • cannot avail themselves of the fact to the prejudice of the plaintiff.
It appears upon the consideration, therefore, of the whole case, that there was sufficient evidence to require the learned justice presiding in the court below, to submit the issue to the jury. Indeed, upon the record, there seems to be very little doubt that the services for which compensation is asked by the plaintiff, were rendered by the intestate to the defendant, and through the instrumentality of Mr. Wallace, its agent who engaged him for the purpose.
It is not intended thus to express any opinion upon the merits which may be used to influence the ultimate result, but simply to emphasize the conviction that the question at issue should have been submitted to the jury.
The judgment, therefore, should be reversed, and a new trial ordered, with costs to abide the event.
Van Brunt, P. J., and Daniels, J., concur.